**Stanley C. STONE, Appellant,**

v.

**Raymond A. ENSTAM, Andrew G. Dean, and Worldcom, Inc., Appellees.**

**No. 18923.**

Court of Civil Appeals of Texas, Dallas.

August 5, 1976.

Rehearing Denied Sept. 2, 1976.

[redacted]

[redacted]

[redacted]

Charles A. Girand, Herndon, Girand & Dooley, Dallas, for appellant.

Raymond A. Enstam, Warren E. Zimmerman, Zimmerman & Zimmerman, Dallas, for appellees.

CLAUDE WILLIAMS, Chief Justice.

Stanley C. Stone brought this action against Raymond A. Enstam, Andrew G. Dean, and Worldcom, Inc. alleging that under article 581–1 *et seq.* of the Texas Securities Act and Section 27.01 of the Texas Business and Commerce Code he was entitled to recover $5,000 paid for 2,000 shares of Worldcom stock purchased by Stone from Enstam, together with interest and exemplary damages. Following a nonjury trial, the court rendered a take-nothing judgment against Stone and in favor of Enstam, Dean and Worldcom. Stone appeals from that judgment asserting that the trial court erred (1) in finding that defendants did not violate Tex.Rev.Civ.Stat.Ann. art. 581–33A (Vernon 1964) or Tex.Bus. & Comm.Code Ann. § 27.01 (Vernon 1968); (2) in finding that Stone ratified any sale of stock; and (3) in setting aside an interlocutory default judgment against Dean on its own motion. We find no merit to any of these contentions and, accordingly, affirm the judgment.

In 1970, Worldcom was engaged in the sale and leasing of data communications equipment. At the time of the subject securities transaction, Dean was president and Enstam was vice president of Worldcom. In the summer of 1971, Stone, while selling communications services, visited Worldcom and met Enstam. On October 14, 1971, Enstam entered into an agreement whereby Stone bought from him 2,000 shares of Worldcom stock for $5,000. Stone did not pay for these shares in cash but on that date signed a note, security agreement and a letter agreeing to purchase the shares for investment only and further agreeing not to resell these shares without the written consent of Worldcom. Stock certificates representing these shares were not issued by Worldcom to Stone until he paid the total sum of $5,000 on January 17, 1972. In December 1971, Worldcom agreed to merge with Strategic Metals Research, Inc., a publicly-traded company. The merger was completed in February 1972, and Worldcom stock thereafter was publicly traded.

The present action was filed on December 9, 1974, against the three defendants. Enstam and Worldcom answered with a general denial and an affirmative defense of statute of limitations. Dean failed to file an answer. Stone sought a separate hearing concerning Dean and when Dean failed to appear, the trial court entered an interlocutory default judgment against this defendant. Dean filed a motion for new trial which was overruled.

During a later contested nonjury trial against Enstam and Worldcom, Stone testified that in the summer of 1971, Dean told him that: (1) Worldcom would be in the black in its first year; (2) Worldcom was going to go public; (3) the stock was selling to other people at four dollars to five dollars per share; (4) the stock would sell in the future for forty dollars to fifty dollars per share; and (5) no audited financial statement was available at that time. Since Dean was not present at this trial, he did not confirm or deny these allegations. Stone further testified that after he asked

Dean how he might acquire stock in Worldcom, Dean told him Dean would not sell his personal stock and that Worldcom would not sell any stock, but that Dean would try to find someone interested in selling stock to Stone. At this time there were about twelve small shareholders in addition to the three founders. According to Stone, Dean told him he had found a possible seller in Enstam. Both Enstam and Stone testified that Stone had already made up his mind to acquire the stock before talking to Enstam. Enstam testified that his only discussion with Stone involved terms of payment and that he made no further representation.

On November 29, 1971, Arthur Young & Company delivered an audited financial statement to Worldcom for its fiscal year ending September 30, 1971. Robert E. McKee, III, an independent business consultant, testified as a disinterested witness that this financial statement was freely available at Worldcom's office after November 29, 1971. This report was copied into a proxy statement which was issued in connection with the merger between Worldcom and Strategic Metals Research, Inc. Stone admits that he obtained the proxy statement and financial statement in January or February 1972, and further admits it contained the information which he claims was misstated or omitted. Stone further testified that if he had known the omitted and misstated facts, he would not have purchased the stock. He testified that he did not complain to Enstam, Dean or anyone else about what he learned in the financial statement, nor did he attempt to return the stock for three years after discovering these alleged misrepresentations. He also testified that the fact the stock was trading around $9.50 per share was part of the reason he did not to return the stock during this period of time.

Following the hearing, the trial court rendered a take-nothing judgment in favor of Enstam and Worldcom. Subsequently, the court on its own motion set aside the interlocutory default judgment previously rendered against Dean and then proceeded to hold a contested hearing. Dean filed a general denial but did not testify. The only evidence admitted at the hearing was the record of the previous hearing against Enstam and Worldcom. Thereupon the court proceeded to render a take-nothing judgment in favor of Dean thereby making the judgment final as to all parties.

Before considering Stone's basic contentions we must dispose of two threshold questions dealing with procedure. The first question is presented by appellees Enstam and Worldcom in which they contend that appellant Stone's points of error are improper and should be stricken. The second question is presented by appellant Stone in which he argues that the trial court had no authority to set aside the interlocutory default judgment against Dean and, therefore, such judgment became final.

### Improper Points of Error

Stone presents twenty-four points of error, each of which alleging that there was no evidence or in the alternative insufficient evidence to support the various findings of the court. Illustrative of these points are points one and two quoted in the margin.[1] Enstam and Worldcom argue that since Stone had the burden of proof in the trial court on each of the questioned issues of fact found by the court adversely to him, such points of error are improper and incorrect as a matter of law, and we do not have jurisdiction to review these points on appeal. As authority for this proposition, they cite Prunty v. Post Oak Bank, 493 S.W.2d 645, 646 (Tex.Civ.App.-Houston [14th Dist.] 1973, writ ref'd n.r.e.), wherein that court held that on appeal by plaintiff, "no evidence" points of error with reference to the jury's failure to find the defendant negligent in its conduct were improper and

---

1. There is no evidence to support the finding of the court that the sale of stock by Enstam to Stone did not violate any provisions of article 581–33 A(1) of Texas Revised Civil Statutes.

There is insufficient evidence to support the finding of the court that the sale of stock by Enstam to Stone did not violate any provisions of article 581–33 A(1) of the Texas Revised Civil Statutes.

did not invoke the appellate court's authority to review. The Houston Court of Civil Appeals cited C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191 (Tex. 1966) to support this holding. A careful review of *Campbell* reveals that Chief Justice Calvert wrote only that the defendant had raised proper points of error in the court of civil appeals. However, the issue of an appellate court's authority to review when the points of error are improper was not raised. Also, the Houston court cites as authority Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Texas L.Rev. 361, 369 (1960) in which Chief Justice Calvert wrote concerning "no evidence":

> Before a party is entitled to have a judgment based on the answer reversed and judgment rendered in his favor, it must appear that the evidence establishes conclusively that the act was committed. In this situation *it would be much better* to forget the words "no evidence" and assert in the point of error, as well as in the basic procedural step in the trial court, that the evidence establishes conclusively, or as a matter of law, that the act was committed. [Emphasis added.]

At page 366, Chief Justice Calvert also wrote concerning "insufficient evidence":

> A point of error asserting that a jury's finding of the existence of a vital fact is contrary to the great weight and preponderance of the evidence means exactly what it states in very simple language. It needs no explanation. *The point is an "insufficient evidence" point* in the sense that it asserts the insufficiency of the evidence to support a finding of the existence of a vital fact when the great weight and preponderance of the evidence supports its non-existence. [Emphasis added.]

Recently, this article has been cited for the rule that:

> When a party gets an adverse answer to special issues on which he had the burden of proof (e. g., the jury gives a negative answer to his issue regarding his opponent's negligence), it *may be* attacked with a legal sufficiency point of

"as a matter of law" and the factual sufficiency point "against the great weight." [Emphasis added.] O'Connor, *Evidence Points on Appeal,* 37 Tex.B.J. 879 (1974).

■ We do not read these authorities as a mandatory requirement that a party on appeal must properly state its points of error in his brief if the total content of his brief as well as his oral argument shows the court his intention to urge the correct point of error. For a court to hold otherwise would create the harsh procedural result denying the party an appeal on the merits. Tex.R.Civ.P. 1 states that the objective of our rules of civil procedure is to obtain a fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law, and in accordance with this objective these rules should be given a liberal construction. This court, when answering the argument that a point of error is too general, has long held that we will discuss the grounds as we understand them upon which the appellant apparently relies to support his appeal, as disclosed in the statements and argument accompanying his points on appeal. *Wyche v. Noah,* 288 S.W.2d 866, 867 (Tex.Civ.App.—Dallas 1956, writ ref'd n. r. e.), citing *Fambrough v. Wagley,* 140 Tex. 577, 169 S.W.2d 478 (1943); *A. T. Little v. Employees Security Life Insurance Co.,* 343 S.W.2d 517, 518 (Tex.Civ.App.—Dallas 1961, writ ref'd n. r. e.). From a reading of appellant's complete brief, as well as from appellant's oral argument, we are convinced that appellant's "no evidence" and "insufficient evidence" points also incorporate the contention that the findings of the trial court are against the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, we overrule the contention advanced by appellees and will consider the points of error in the light of these rules.

*Interlocutory Default Judgment*

■ Appellant Stone urges that the trial court was without authority to set aside the interlocutory default judgment against Dean because no grounds for setting it aside were established. The record shows

that within ten days after the entry of the interlocutory default judgment, Dean filed a motion for new trial which was overruled. Subsequently, the trial court upon its own motion set aside the interlocutory default judgment and ordered the cause set for trial. The hearing was held in which the court admitted the factual record of the trial proceedings concerning the other defendants and rendered a final take-nothing judgment against Dean. Stone asserts that the trial court was not authorized to set aside this default judgment without proof of the requirements stated in *Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124 (1939, opinion adopted) and *Ivy v. Carrell,* 407 S.W.2d 212 (Tex.1966). We do not agree. In both of these cases, a final default judgment against the defendants had been rendered and the question was whether the court erred in refusing to set it aside. In the pending case, the default judgment against Dean was *interlocutory* since Stone's claims against Enstam and Worldcom were still pending. The court did not sever Stone's claim against Dean under Tex.R.Civ.P. 174(b) and did not enter a final judgment on that claim. Since the judgment remained interlocutory, a motion for new trial under Tex.R.Civ.P. 329b was premature, and the court retained jurisdiction over the cause. Therefore, the trial court had authority to set aside the interlocutory judgment on its own motion and subsequently enter a final judgment adjudicating the rights of all parties.

We now consider the basic issues that are determinative of this appeal.

### Statute of Limitations

Two of the appellees, Enstam and Worldcom, pleaded as an affirmative defense against Stone's cause of action, the applicable statute of limitations. Consequently, we must first decide whether limitations bars Stone's claims against them.

### Claim Against Enstam and Worldcom Under Texas Securities Act § 33 A(1)

■ Stone also contends that the trial court erred in finding that the sale of stock by Enstam to him did not violate the provisions of Texas Securities Act § 33 A(1). In response Enstam and Worldcom argue that any claim under this section is barred by the three-year statute of limitations pursuant to Texas Securities Act § 33 C which states:

No person may sue under Subdivision A(1) of this Section 33 more than three (3) years after the contract of sale.

The trial court found that on October 14, 1971, Enstam sold to Stone 2,000 shares of common stock in Worldcom. A review of the evidence reveals that Stone signed a promissory note, dated October 14, in the amount of $5,000 payable to Enstam. Also on that date Enstam and Stone signed and executed a security agreement granting Enstam a security interest in the shares of Worldcom, Inc. to secure payment due on the $5,000 note. Thus, the trial court's finding that the stock was sold on October 14 is not against the great weight and preponderance of the evidence. The present action was filed on December 9, 1974, which was more than three years after the execution of the sale contract. Consequently, we hold that the trial court was correct in finding that the three-year statute of limitations barred Stone from recovery against Enstam and Worldcom.

### Claim Against Enstam and Worldcom Under Texas Securities Act § 33 A(2)

■ Stone asserts that the trial court erred in finding that the sale of stock by Enstam to him did not violate any of the provisions of Texas Securities Act § 33 A(2). Again, Enstam and Worldcom argue that appellant's claim is barred by the three-year statute of limitations under Texas Securities Act § 33 C which states:

No person may sue under Subsection A(2) more than three (3) years after the contract of sale or more than (3) years after the buyer in the exercise of ordinary care should have discovered that such sale was made in violation of said Subsection A(2).

The trial court found that each fact which Stone claims was omitted or misstat-

ed was reasonably available to Stone after November 29, 1971, and that he could reasonably have ascertained these facts after that date. A review of the evidence shows that the audited financial report of Worldcom was available in its offices on that date and the trial court's finding that a reasonable purchaser could have ascertained the omitted facts from this financial report on that date is not against the great weight and preponderance of the evidence. Hence, the three-year statute of limitations provided in § 33 C of the Texas Securities Act begun running on November 29, 1971. Since the present action was not filed until December 9, 1974, more than three years had elapsed and the action is barred.

### Claim Against Enstam and Worldcom Under Texas Business & Commerce Code, § 27.01

■ Stone alleged that the sale of stock by Enstam to Stone violated Tex.Bus. & Comm.Code Ann. § 27.01 and contends here that the trial court erred in failing to find such a violation. Enstam and Worldcom contend that any right to bring an action under this section is barred by the two-year statute of limitations provided in Tex.Rev. Civ.Stat.Ann. art. 5526 (Vernon 1958). We agree with their contention. The supreme court has held that limitations will bar an action based on fraudulent misrepresentations that induce a purchase of stock if it is filed more than two years after plaintiff has acquired knowledge of facts which would cause a reasonably prudent person to make an inquiry which would lead to discovery of the fraud. *White v. Bond,* 362 S.W.2d 295, 296 (Tex.1962); *Ryan v. Collins,* 496 S.W.2d 205 (Tex.Civ.App.—Tyler 1973, writ ref'd n. r. e.). As shown in the preceding section of this opinion, the evidence shows that Stone could have discovered the alleged misstated or omitted facts on November 29, 1971. Since he filed this action more than two years, later, he is barred by the statute of limitations.

### Securities Actions Against Dean

Inasmuch as Dean did not plead the statute of limitations as an affirmative defense, we must determine if Stone proved the essential elements of a claim against him, as a matter of law and whether the trial court's adverse finding is against the great weight and preponderance of the evidence.

### Claim Against Dean Under the Texas Securities Act § 33 A(1)

■ Stone argues that Texas Securities Act § 33 A(1) creates liability because Dean failed to secure a permit or registration for issue under Texas Securities Act § 7 A(1). However, a close analysis of § 7 A(1) reveals that it is limited to dealers, agents or salesmen who sell or offer to sell any security unless exempted by the Securities Act. A dealer is one who attempts to sell securities for himself or others as a business, and a salesman is one employed by a dealer to sell, offer to sell, solicit subscriptions, or deal in any other manner in securities. *Cosner v. Hancock,* 149 S.W.2d 239, 243 (Tex.Civ.App.—El Paso 1941, writ dism'd jdgmt. cor.), *Anderson v. Eliot,* 333 S.W.2d 654, 658 (Tex.Civ.App.—Eastland 1960, writ ref'd). The evidence is insufficient to show that Dean was acting in the capacity of a dealer, agent or salesman concerning this transaction. Inasmuch as this is an essential element to sustain recovery under the act and since it was not proved, we hold that the trial court did not err in failing to find the violation of Texas Securities Act § 33 A(1), and certainly such finding on the part of the court is not contrary to the great weight and preponderance of the evidence.

### Claim Against Dean Under the Texas Securities Act § 33 A(2)

■ This provision states:

Any person who offers or sells security (whether or not the security or transaction is exempt under Section 5 or 6 of this Act) by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made not misleading (when the person buying the security does not know of the untruth or omission, and who in the exercise of reasonable

care could not have known of the untruth or omission) is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at six per cent (6%) per year from the date of payment, less the amount of any income received on the security upon the tender of the security, or for damages if he no longer owns the security.

Stone argues that a cause of action against Dean under § 33 A(2) was established by proof that Dean made statements: (1) Pertaining to the future value of the stock; (2) promising a profit from operations by the end of the first year; (3) representing audited financial statements were not available because the corporation was changing auditors and the books and records were not available; and (4) asserting that the corporation could not directly sell stock to him because a sale would place the corporation in jeopardy of losing its status under state and federal securities regulations concerning unregistered securities. Stone further asserts that financial information such as profitability, working capital deficits, dependence upon one customer, and shares outstanding are *per se* material facts necessary to make other statements made in connection with the sale of stock not misleading. Our examination of the record convinces us that Stone failed to prove Dean was a seller of securities under the Texas Securities Act. The wording of § 33 A(2) states:

> Any person who offers or sells . . . is liable to the person buying the securities from him.

The supreme court has said:

> Section 33A states that the seller "is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid . . . ." *Meadows v. Bierschwale,* 516 S.W.2d 125, 130 (Tex.1974).

Stone cites and relies upon *Brown v. Cole,* 155 Tex. 624, 291 S.W.2d 704, 708 (1956) as authority that under the Texas Securities Act "the seller may be any link in the chain

of the selling process" or in the words of the Act he is the one who performs "any act by which a sale is made." Although we are aware of this general statement of law, we must look to the facts of that case to determine the context in which the statement was made. In *Brown,* the defendant was an active negotiator between other parties, and his active negotiation resulted in the sale of stock. The supreme court in *Brown* distinguished the facts before it from the facts in *Herren v. Hollingsworth,* 140 Tex. 263, 167 S.W.2d 735 (1943). In *Herren,* the court held that a property owner's agent who was authorized only to find an oil driller and who was not authorized to negotiate a contract was not selling securities under the Texas Securities Act. In the case before us, Dean was not acting as an agent of either Stone or Enstam. He only volunteered without benefit to himself to find someone who would sell Worldcom stock to Stone. It is apparent that *Brown* is distinguishable from the situation presented here and that Dean was not a seller of securities under the Texas Securities Act. Thus, Stone has failed to establish his claim under the Texas Securities Act § 33 A(2) against Dean as a matter of law and it cannot be said that the trial court's finding of no violation of this statute is contrary to the great weight and preponderance of the evidence.

*Claim Against Dean Under Texas Business & Commerce Code § 27.01*

The Texas Business and Commerce Code § 27.01 provides:

> A person who makes a *false representation* or *false promise,* and a person who benefits from that false representation or false promise, commit[s] the fraud described in Subsection (a) of this section and are jointly and severally liable to the person defrauded for actual damages. [Emphasis added.]

Stone argues that Dean made false representations which induced him to purchase the stock. We find no evidence of a false representation of existing material fact. Where statements or representations

are alleged to have been fraudulent but are in the nature of a promise or of an act to be performed in the future and not statements of existing facts, such statements cannot legally be said to be a fraudulent misrepresentation unless it is alleged and proved that at the time the statement or promise was made the person making the same did not intend to perform it. The mere failure to perform a promise is not of itself evidence of an intent not to perform. *Rapid Transit Co. v. Smith,* 98 Tex. 553, 86 S.W. 322, 335 (1905); *Precision Motors v. Cornish,* 413 S.W.2d 752, 756 (Tex.Civ.App.— Dallas 1967, writ ref'd n. r. e.); and *Morgan v. Box,* 449 S.W.2d 499, 504 (Tex.Civ.App.— Dallas 1969, no writ). The speculative statements asserting that stock would eventually sell at a high price and that Worldcom would show a profit in the future are not statements of material fact presently existing which would constitute fraud under this section but rather are only statements of optimism and conjecture. The statement by Dean that audited financial statements were not available to him at the time prior to November 29 was in fact a true representation. Further, the representation that Worldcom would not sell the stock without losing exempt status for unregistered securities was in the opinion of Dean, an attorney, a true statement of the law. We hold that under the facts contained in this record the trial court did not err in failing to find that Dean violated the Texas Business and Commerce Code § 27.01. The trial court's finding was not so contrary to the great weight and preponderance of the evidence as to be manifestly wrong or unjust.

In view of our holdings, we find it unnecessary to pass upon Stone's point of error complaining of the trial court's action in finding that he had ratified the stock transaction. Finding no reversible error presented in this record we affirm the judgment of the trial court.