**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| RGIS INTERNATIONAL TRANSITION HOLDCO, LLC, RGIS INTERNATIONAL TRANSITION HOLDCO MEXICO, LLC, and RGIS MEXICO, LLC, <br>                Plaintiffs, <br> v. <br><br> RETAIL SERVICES WIS CORPORATION, RETAIL SERVICES WIS HOLDINGS CORPORATION, JAMES ROSE, and RICHARD BAXTER, <br>                Defendants. | C.A. No. N21C-12-077 PRW CCLD |

Submitted: June 26, 2025
Decided: September 29, 2025

*Upon Defendants' Motion for Dismissal of Plaintiffs' Count II and III,*
**GRANTED.**


**MEMORANDUM OPINION AND ORDER**


Michael A. Barlow, Esquire, and Shannon M. Doughty, Esquire, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Wilmington, Delaware; Michael B. Carlinsky, Esquire (*argued*), Jianjian Ye, Esquire, and Caroline M. Vermillion, Esquire, QUINN EMANUEL URQUHART & SULLIVAN, LLP, New York, New York; Christopher P. Simon, Esquire, and David G. Holmes, Esquire, CROSS & SIMON, LLC, Wilmington, Delaware, Jed M. Schwartz, Esquire, MILBANK LLP, New York, New York, *Attorneys for Plaintiffs*.

Samuel L. Moultrie, Esquire, and Bryan T. Reed, Esquire, GREENBERG TRAURIG, LLP, Wilmington, Delaware; Ian S. Marx, Esquire (*argued*), and Todd L. Schleifstein, Esquire, GREENBERG TRAURIG, LLP, Florham Park, New Jersey; Karl G. Dial, Esquire, and Morgan E. Jones, Esquire, GREENBERG TRAURIG, LLP, Dallas, Texas, *Attorneys for Defendants*.

**WALLACE, J.**

This is a fraud and securities action between Plaintiffs RGIS International Transition Holdco, LLC, RGIS International Transaction Holdco Mexico, LLC, and RGIS Mexico, LLC (collectively "RGIS"), and Defendants Retail Services WIS Corporation ("WIS"), Retail Services WIS Holdings Corporation ("WIS Holdings", together with WIS, "Selling Defendants"), James Rose, and Richard Baxter (together with Mr. Rose, "Individuals").[1]  The dispute arises from RGIS's purchase of the outstanding share capital of non-parties Washington Inventory Service Limited ("WIS UK"), Washington Inventory Service Mexico, S. de R.L. de C.V. ("WIS Mexico"), and Proveedora de Servicios Internacional, S. de R.L. de C.V. ("PSI", collectively with WIS UK and WIS Mexico, the "Transferred Companies"), from Selling Defendants (the "Transaction").[2]  The parties memorialized the Transaction in a Share Purchase Agreement (the "Agreement").[3]  RGIS alleges the Agreement contains several false representations and warranties related to the Transferred Companies, which induced them to enter the Transaction.[4]

---

[1]  *See generally* D.I. 55 (Pltfs. Second Amended Complaint [hereafter "SAC"]).  Plaintiffs initially filed claims for fraud and civil conspiracy. *See generally* D.I. 1 (Complaint [hereafter "Compl."]); D.I. 22 (Pltfs. First Amended Complaint [hereafter "FAC"] (D.I. 22)).  After the Court granted Defendants' previous motion to dismiss the FAC's civil conspiracy and aiding and abetting fraud claims against Messrs. Rose and Baxter, Plaintiffs filed the operative SAC. *See RGIS International Transition Holdco, LLC v. Retail Services Wis Corporation*, 2024 WL 568515, at *1, *6 (Del. Super. Feb. 13, 2024) (dismissing the FAC's civil conspiracy and aiding and abetting fraud claims) ("*RGIS Int'l I*").

[2]  *See* SAC ¶ 1.

[3]  *See id.* ¶ 2

[4]  *See id.* ¶¶ 2-6, 19-60.

RGIS initiated this action seeking damages for Defendants' allegedly fraudulent representations in the Agreement.[5] RGIS's operative SAC asserts three causes of action: (1) Count I—Fraud against Selling Defendants;[6] (2) Count II—Violation of the Texas Securities Act (the "TSA") against Selling Defendants;[7] and Count III—Violation of the TSA against the Individuals.[8]

Defendants responded to the SAC by filing the current motion to dismiss Counts II and III (the "Motion").[9] The Motion advances four main arguments: (1) the Court lacks personal jurisdiction over the Individuals; (2) the Agreement's Delaware choice-of-law provision bars Counts II and III; (3) Counts II and III are time-barred; and (4) Count III fails to state a claim against the Individuals.[10] RGIS counters each of these arguments, maintaining the Court has personal jurisdiction over the Individuals and its TSA claims are proper.[11] For the reasons now explained, the Motion is granted and Counts II and III dismissed as time-barred.

---

[5] *See generally id.*

[6] *See id.* ¶¶ 61-73.

[7] *See id.* ¶¶ 74-91 (asserting a claim for violation of the TSA, TEX. GOV'T CODE ANN. § 4008.052 (2021)).

[8] *See id.* ¶¶ 92-104 (asserting a claim for violation of the TSA, TEX. GOV'T CODE ANN. § 4008.055 (2021)).

[9] *See generally* Defs. Mot. to Dismiss (D.I. 58).

[10] *See id.*

[11] *See generally* Pltfs.' Answering Brief in Opposition to Defendants' Motion to Dismiss Counts II and III of the Second Amended Complaint (hereafter "MTD Opp'n") (D.I. 60).

## I. BACKGROUND

### A. THE PARTIES

Each Plaintiff is a Delaware LLC affiliated with non-party RGIS, LLC, "a global leader in retail merchandising and inventory services[.]"[12]

The Selling Defendants are each a Delaware corporation headquartered in Dallas, Texas.[13] The Individuals are Texas residents.[14] Before the Transaction, Mr. Rose served as CEO of WIS and WIS Holdings, as well as a member of PSI and WIS Mexico's board.[15] At the same time, Mr. Baxter also served on PSI and WIS Mexico's board as well as WIS and WIS Holding's CFO.[16]

### B. THE TRANSACTION AND THE AGREEMENT

In September 2021, RGIS agreed to purchase all issued shares of the Transferred Companies from Selling Defendants for $7.5 million.[17] The Agreement effectuated that Transaction.[18] While Mr. Rose signed on behalf of the Selling Defendants, neither of the Individuals are a party to the Agreement.[19] The

---

[12] SAC ¶ 9.

[13] *Id.* ¶¶ 10-12.

[14] *Id.* ¶¶ 13-15.

[15] *Id.* ¶ 13.

[16] *Id.* ¶ 14.

[17] *Id.* ¶ 1.

[18] *Id.* ¶ 2; *see generally* SAC, Ex. 1 (the "Agreement").

[19] *See* Agreement at Preamble, Signature Pages.

Agreement is governed by Delaware law[20] and contains a Delaware forum-selection clause.[21]

Several of the Agreement's representations and warranties are central to the parties' dispute.[22] Specifically, RGIS's claims implicate the representations and warranties in Sections 5.1.4.1, 5.1.4.2, 5.1.5, 5.1.8.2, 5.1.9.1, and 5.1.9.3.[23]

Section 5.1.4.1 states Selling Defendants provided "true and accurate . . . financial statements" covering the Transferred Companies' "unaudited balance sheet and statements of operating income and expenses" for 2021.[24]

Section 5.1.4.2 warrants "[t]here are no material liabilities or obligations of the Transered Companies of any nature, whether or not accrued, contingent or otherwise, other than those" on the provided financial statements, incurred in the ordinary course, or contemplated by the Agreement.[25]

Section 5.1.5 represents in relevant part, "[s]ince March 31, 2021, each of the

---

[20]   *See id*. § 15.1.

[21]   *See id.* § 15.2.

[22]   *See* SAC ¶¶ 2-6, 19-60.

[23]   *See id.* ¶¶ 21-26. While the exact contours of these representations and warranties are critical to RGIS's claims, the specifics aren't relevant to resolving the Motion. So, the Court only briefly discusses RGIS's allegations concerning each at-issue representation and warranty.

[24]   Agreement § 5.1.4.1. Additionally, Selling Defendants represented those financial statements were prepared "in accordance with GAAP" and "present[ed] fairly, in all material respects, the financial position . . . of the Transferred Companies." *Id.* Moreover, Section 5.1.4.1 states "the Transferred Companies have no indebtedness other than (i) as reflected on the Financial Statements or (ii) as incurred in the Ordinary Course of Business." *Id.*

[25]   *Id.* § 5.1.4.2.

Transferred Companies has conducted the Business in the Ordinary Course of Business."[26]

Section 5.1.8.2 provides "[t]o the knowledge of Seller . . . there are no unfair labor practice charges, grievances or complaints anticipated, pending, or threatened . . . involving or affecting the Transferred Companies[.]"[27] The Agreement defines "knowledge of the Seller" as "the actual knowledge after reasonable inquiry of James Rose and Richard Baxter."[28]

Section 5.1.9.1 warrants in relevant part, "all material Taxes due and payable [on behalf of the Transferred Companies] have been paid or will be paid by the due date thereof" and "each of the Transferred Companies has complied with all applicable Laws relating to the payment and withholding of Taxes[.]"[29]

Section 5.1.9.3 states "[t]o the knowledge of Seller, the Transferred Companies have properly collected and remitted all material amounts of sales and similar Taxes with respect to sales or leases made or services provided[.]"[30]

## C. THE ALLEGED FRAUD AND SECURITIES VIOLATIONS

According to RGIS, after the Transaction closed, it discovered the

---

[26]  *Id.* § 5.1.5.

[27]  *Id.* § 5.1.8.2.

[28]  *Id.* § 1.1 (knowledge of the Seller).

[29]  *Id.* § 5.1.9.1.

[30]  *See id.* § 5.1.9.3.

representations and warranties discussed above were false.[31]  First, RGIS alleges PSI and WIS Mexico had numerous outstanding tax liabilities in Mexico.[32]  Second, RGIS asserts "Defendants failed to disclose at least 75 currently pending claims and labor-related lawsuits against the Transferred Companies."[33]  Third, the SAC alleges the Selling Defendants improperly transferred funds from WIS UK to themselves outside the ordinary course of business.[34]  Fourth, RGIS claims WIS UK paid bonuses outside the ordinary course of business.[35]

In addition to rendering the at-issue representations and warranties fraudulent, RGIS alleges Defendants' actions violated the TSA.[36]  Specifically, the SAC asserts the Selling Defendants violated TSA § 4008.052 by selling "securities to Plaintiffs by means of numerous false statements and omissions of material fact[.]"[37]  Regarding the Individuals, RGIS alleges they are liable under TSA § 4008.055(a) as

---

[31]  *See* SAC ¶¶ 27-60.  Here too, the details of the alleged falsity of the at-issue representations and warranties aren't of particular moment in resolving the present motion.  So again, the Court only briefly outlines RGIS's allegations concerning Defendants' allegedly fraudulent conduct.

[32]  Specifically, RGIS alleges: (1) PSI has outstanding VAT tax liability of approximately $2 million; (2) PSI owes income taxes from 2007 and 2015-2020 in the amount of approximately $400,000; (3) PSI has not filed a monthly tax return since 2013 or an annual return for 2016, 2019, and 2020; and (4) WIS Mexio is subject to an audit with potential liability of approximately $4.2 million. SAC ¶¶ 29-24.

[33]  *Id.* ¶¶ 48-51.

[34]  *Id.* ¶¶ 52-55.

[35]  *Id.* ¶¶ 56-60.

[36]  *Id.* ¶¶ 74-104.

[37]  *Id.* ¶¶ 74-91.

both "control persons" of the Selling Defendants and "aiders" of the allegedly fraudulent sale.[38]

## II. STANDARD OF REVIEW

Superior Court Civil Rule 12(b)(2) governs motions to dismiss for lack of personal jurisdiction.[39] While a complaint need not "contain facts establishing a court's personal jurisdiction over a non-resident defendant," upon a Rule 12(b)(2) motion "the plaintiff does shoulder such a burden."[40] In determining whether personal jurisdiction exists, courts consider "the pleadings, affidavits, and discovery of record."[41] Yet, "unless contradicted by affidavit, the Court must (1) accept as true all well-pleaded allegations in the complaint; and (2) construe the record in the light most favorable to the plaintiff."[42]

A motion to dismiss for failure to state a claim implicates Superior Court Civil Rule 12(b)(6).[43] Such a motion requires the Court determine "whether there are any

---

[38] *Id.* ¶¶ 92-104.

[39] Del. Super. Ct. Civ. R. 12(b)(2); *see Curam, LLC v. Gray*, 2025 WL 733256, at *4 (Del. Super. Ct. Mar. 6, 2025).

[40] *Green America Recycling, LLC v. Clean Earth, Inc.*, 2021 WL 2211696, at *3 (Del. Super. Ct. June 1, 2021) (cleaned up). When "no meaningful discovery has been conducted, that burden is a *prima facie* one." *Id.* (citing *Endowment Rsch. Grp., LLC v. Wildcat Venture Partners, LLC*, 2021 WL 841049, at *4 (Del. Ch. Mar. 5, 2021)).

[41] *Economical Steel Building Technologies, LLC v. E. West Construction, Inc.*, 2020 WL 1866869, at *1 (Del. Super. Ct. Apr. 14, 2020) (quoting *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007)).

[42] *Green America*, 2021 WL 2211696, at *3 (internal quotes omitted).

[43] Del. Super. Ct. Civ. R. 12(b)(6).

reasonably conceivable set of circumstances susceptible [to] proof under the complaint under which a Plaintiff may be entitled to recovery."[44] Under the well-settled Rule 12(b)(6) standard, the Court will:

> (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) [not dismiss the claims] unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[45]

The Court does not, however, "accept as true conclusory allegations without any specific supporting factual allegations."[46]

## III. DISCUSSION

In seeking dismissal of SAC Counts II and III, Defendants advance four primary arguments.[47] First, Defendants say the Court lacks personal jurisdiction over the Individuals.[48] Second, they contend the Agreement's Delaware choice-of-law clause bars Counts II and III—which invoke Texas statutory securities law.[49] Third, Defendants insist that if the TSA claims are cognizable, then Counts II and III

---

[44] *Langford v. Irgau*, 2025 WL 1013491, at *2 (Del. Super. Ct. Apr. 1, 2025) (citing *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. Ct. 2018)).

[45] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC,* 27 A.3d 531, 535 (Del. 2011).

[46] *In re General Motors (Hughes) Shareholder Litigation*, 897 A.2d 162, 168 (Del. 2006) (internal quotes omitted).

[47] *See generally* MTD.

[48] *See id.* at 10-18.

[49] *See id.* at 18-23.

are time-barred by its three-year statute of limitations.[50] Fourth, they assert Count III fails to state a claim against the Individuals for control-person or aider liability under the TSA.[51]

## A. THE AGREEMENT'S FORUM-SELECTION CLAUSE PROVIDES PERSONAL JURISDICTION OVER THE INDIVIDUALS.

### 1. The Parties' Contentions

Defendants say the Court lacks personal jurisdiction over the Individuals and that the SAC's allegation that the Individuals are "necessary and proper" parties[52] does nothing to establish such.[53] Defendants also contend the SAC does not allege facts that show exercising jurisdiction over the Individuals comports with due process.[54] Defendants point out that: (1) "the Individuals are not Delaware residents";[55] (2) the Transferred Companies are not Delaware entities;[56] (3) RGIS does not allege "the Agreement was negotiated in Delaware";[57] and (4) "the

---

[50]   *See id.* at 23-27.

[51]   *See id.* at 27-30.

[52]   SAC ¶ 18.

[53]   MTD at 10-18. Specifically, Defendants contend this conclusory allegation that "simply parrots-back the legal standard" rather than alleging fact demonstrating personal jurisdiction. *Id.* at 10-13.

[54]   *Id.* at 13-18; *see Hazout v. Tsang Mun Ting*, 134 A.3d 274, 278 (Del. 2016) ("[A]ny exercise of personal jurisdiction under [a] statute [must be] consistent with due process, by applying the established minimum contacts test[.]").

[55]   *See* SAC ¶¶ 13-14.

[56]   *See* SAC ¶ 1.

[57]   MTD at 16; *see generally* SAC.

Agreement did not involve the change in control of a Delaware corporation."[58]

According to the Plaintiffs, the Individuals consented to Delaware jurisdiction in two ways.[59] First, Plaintiffs contend the Agreement's forum-selection clause binds the Individuals, notwithstanding their non-signatory status.[60] Plaintiffs assert the Individuals are "closely related" to the Agreement, because they received a direct benefit therefrom[61] and it was "foreseeable" they would be bound thereby.[62] Second, Plaintiffs argue 10 *Del. C.* § 3114 establishes personal jurisdiction over the Individuals as "officers of Delaware corporations" who are "necessary or proper" parties to this action.[63] Plaintiffs also propose that exercising personal jurisdiction

---

[58]  *Id*. at 17 n.6.

[59]  MTD Opp'n at 8-15.

[60]  *Id.* at 9-12 (citing *Aviation W. Charters, LLC v. Freer*, 2015 WL 5138285, at *4 (Del. Super. Ct. July 2, 2015)).  Plaintiffs also argue Agreement Section 11.5 shows that the parties contemplated that a signatory's officers could be held independently liable for fraud. *Id.* at 12.

[61]  MTD Opp'n at 10-11.  The direct benefit the Individuals alleged received was being "relieved of their personal liability exposure for the Mexican Entities' outstanding VAT liability. *Id.* (citing SAC ¶ 47).

[62]  *Id.* at 11-12 ("[I]t is foreseeable for a non-signatory who received a direct benefit to be subject to forum-selection clauses where, as here, they are closely related to the contract or were involved in its planning and negotiation." (citing *Weygandt v. Weco, LLC*, 2009 WL 1351808, at *5-6 (Del. Ch. May 14, 2009)).  Plaintiffs maintain the Individuals "were not mere bystanders to the [Agreement] but active participants in the Selling Defendants' violation." *Id.* (citing SAC ¶¶ 100, 102-03).  Plaintiffs note the Individuals were "the sole contacts for Plaintiffs throughout negotiations, including for diligence." *Id.* (citing SAC ¶ 20).

[63]  *Id.* at 13-15 (citing *Hazout*, 134 A.3d at 290 ("by accepting a position as a directors [or] officer of a Delaware corporation" an individual "consent[s] to appear in this state to defend claims that full under either the Necessary or Proper Party provision.")). Plaintiffs point out the SAC alleged the Individuals are "jointly and severally liable [] [] to the same extent as, Selling Defendants." SAC ¶¶ 97, 104.  Moreover, Plaintiffs maintain the SAC "asserts well-pled claims against the Individual[s] [] for control person and/or aider liability under the TSA, which necessarily arise out of the same facts and occurrences as the claims against the Selling Defendants." MTD Opp'n at

over the Individuals satisfies due process.[64]

Defendants reject the notion that the forum-selection clause binds the Individuals.[65] Defendants contend the SAC does not allege the Individuals directly benefited from the Agreement.[66] And because the Individuals did not receive a direct benefit, say Defendants, the "active-involvement theory" does not provide a "standalone basis . . . to exercise personal jurisdiction[.]"[67]

## 2. The Agreement's Forum-Selection Clause establishes personal jurisdiction over the Individual Defendants.

In the norm, Delaware courts apply a two-prong test to determine whether personal jurisdiction over nonresident defendants exist: "First, the Court must consider whether there is a statutory basis for jurisdiction under Delaware's long arm statute. . . . Second, the Court must evaluate whether the exercise of jurisdiction

---

14-15 (citing SAC ¶ 96).

[64]  *Id.* at 15-20. According to Plaintiffs, the Individuals' (1) position as officers in Delaware corporations, (2) control over the Selling Defendants, and (3) role in negotiating the Transaction, establish the required minimum contacts. *Id.* at 16-19 (citing SAC ¶¶ 15, 20, 95-96, 100, 102-03).

[65]  Defendants' Reply Brief in Further Support of Motion to Dismiss Counts II and III of Plaintiffs' Second Amended Complaint (hereafter "MTD Reply") at 3-7 (D.I. 61).

[66]  *Id.* at 5-6. Defendants note the Court already rejected Plaintiffs' argument that the Transaction extinguished any personal tax liability for the Individuals. *Id.* at 2; *see RGIS Int'l I*, 2024 WL 586515, at *6. According to Defendants, the "SAC did nothing to supplement the FAC's insufficient allegations that–at most–the Individuals' alleged 'exposure' is 'potentially reduced' because of the Agreement." MTD Reply at 5 (quoting SAC ¶ 47). Moreover, Defendants reject Plaintiffs' argument regarding VAT liability to the Mexican government, as untethered from the SAC's allegations. *Id.* at 6.

[67]  *Neurvana Medical, LLC v. Balt USA, LLC*, 2019 WL 4464268, at *8 (Del. Ch. Sept. 18, 2019); MTD Reply at 6-7.

violates [] Due Process."[68] Courts may exercise personal jurisdiction over a nonresident defendant "by consent through conduct, statutory means, or by 'dint of a contractual arrangement.'"[69] Where consent is the basis for personal jurisdiction, a minimum- contacts analysis is unnecessary.[70]

A valid Delaware forum-selection clause can establish consent to personal jurisdiction.[71] Now, it is undisputed that the Individuals did not sign the Agreement in their personal capacities.[72] But in certain circumstances, Delaware courts interpret forum-selection clauses to bind non-signatories.[73]

A forum-selection clause provides personal jurisdiction over a non-signatory where: (1) the forum-selection clause is valid; (2) the non-signatories are third-party beneficiaries or closely related to the agreement; and (3) the claim arises from the non-signatory's standing related to the contract.[74] Here, the parties only dispute

---

[68] *Tell v. Roman Catholic Bishops of Diocese of Allentown*, 2010 WL 1691199, at *8 (Del. Super. Ct. Apr. 26, 2010) (citing *LaNuova D & B, S.p.A. v. Bowe, Inc.,* 513 A.2d 764, 768 (Del. 1986)); *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.,* 871 A.2d 428, 437 (Del. 2005).

[69] *Golden v. ShootProof Holding, LP*, 2023 WL 2255953, at *4 (Del. Ch. Feb. 28, 2023) (quoting *BAM Int'l, LLC v. MSBA Gp. Inc.*, 2021 WL 5905878, at *6 (Del. Ch. Dec. 14, 2021)).

[70] *See Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1145 (Del. 2010).

[71] *Cap. Gp. Cos., Inc. v. Armour*, 2004 WL 2521295, at *3 (Del. Ch. Oct. 29, 2004). Such clauses are "'presumptively valid' and should be 'specifically' enforced unless the resisting party 'could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud and overreaching.'" *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

[72] *See* Agreement at Preamble; Signature Pages.

[73] *See Cap. Gp.*, 2004 WL 2521295, at *5-7.

[74] *Baker v. Impact Holding, Inc.,* 2010 WL 1931032, at *3 (Del. Ch. May 13, 2010).

whether the Individuals are closely related to the Agreement.

A non-signatory is "closely related" to a contract when: (1) "the party receives a direct benefit from the agreement" or (2) "it was foreseeable that the party would be bound by the agreement."[75]

The Court can quickly reject foreseeability as a basis for personal jurisdiction. Foreseeability is *only* a standalone basis to satisfy the closely-related prong when: (1) a non-signatory defendant seeks to enforce a forum-selection clause against a signatory plaintiff; or (2) a non-signatory entity is sued under a contract signed by its controller.[76] Neither situation applies. Thus, a direct benefit is the only possible way the Individuals are closely related to the Agreement.

A direct benefit satisfying the closely-related requirement, "may arise at the time of contracting, or a party may accept the benefits of an agreement after it was executed."[77] Both pecuniary and non-pecuniary benefits are sufficient.[78] The benefit must be direct[79] and actually received; 'the mere contemplation of a benefit does not

---

[75]  *Id.* at *4.

[76]  *Neurvana*, 2019 WL 4464268, at *5-6. The *Neurvana* court rejected the argument that "active involvement in negotiating the Purchase Agreement standing alone should satisfy the foreseeability inquiry." *Id.* at *7. Rather, the "active involvement" theory requires the non-signatory receive a direct benefit. *See id.* at *7-8.

[77]  *Florida Chemical Company, LLC v. Flotek Industries, Inc.*, 262 A.3d 1066, 1091 (Del. Ch. Aug. 17, 2021) (citations omitted).

[78]  *Neurvana*, 2019 WL 4464268, at *4 (collecting cases).

[79]  *Id.* ("[I]ndirect benefits have been deemed insufficient.").

directly confer one.'"[80]

While perhaps a close call, the SAC does allege sufficient facts demonstrating it reasonably conceivable that the Individuals directly benefited under the Agreement.[81] The SAC repeatedly alleges the Transaction "reduc[ed] Rose and Baxter's personal exposure to both civil and potential criminal liability in Mexico" based on the Mexican entities' unpaid tax liabilities.[82] These allegations identify the specific years at issue, type of tax, and amount of potential liability.[83] Thus, the SAC contains more than conclusory allegations that the Individuals received a direct benefit.[84] And the Defendants may criticize the SAC for not citing any specific statute, yet they provide no contrary authority nor affidavit showing RGIS misstates

---

[80] *Florida Chemical*, 262 A.3d at 1091 (quoting *Neurvana*, 2019 WL 4464268, at *4).

[81] The Court's previously Motion to Dismiss opinion does not compel a different result. First, that opinion addressed the FAC, not the operative SAC which contains different allegations. *See see RGIS Int'l I*, 2024 WL 568515, at *3. Second, the Court didn't hold that Messrs. Rose and Baxter received no direct benefit under the Agreement. *See id.* at *5-6. Indeed, the Court opined Messrs. "Rose and Baxter may in fact personally benefit from selling those companies with outstanding tax liabilities." *Id.* *6. Rather, the Court held "RGIS's claims of civil conspiracy and aiding and abetting fail[ed]," because the FAC did not allege Messrs. Rose and Baxter "stepped outside of their corporate role and acted out of personal motivation[.]" *Id.*

[82] SAC ¶ 47 ("[u]nder Mexican law, directors such as Rose and Baxter are subject for non-compliance with VAT requirements, but that exposure is potentially reduced once they no longer serve as directors[.]"); *see id.* ¶¶ 29 ("the VAT liability for PSI amounts to approximately . . . $2 million[] in unpaid VAT from 2013 to 2020, which involves exposure to personal liability both for the Mexican Entities and their managers."); 43 ("Rose assisted . . . to avoid detection by the Mexican taxing authorities and to reduce his personal exposure to liability.").

[83] *See id.* ¶¶ 29, 43, 47.

[84] *See Aviation W. Charters*, 2015 WL 5138285, at *4 ("[C]onclusory allegation[s] [are] not enough to support the assertion that [non-signatory defendant] received a direct benefit from the [agreement].").

Mexican tax law. Absent such, the Court accepts the SAC's allegations as true.[85]

And as such, the SAC contains sufficient allegations showing it is reasonably conceivable the Individuals directly benefited from the Agreement. Hence, the Individuals are closely related to the Agreement and bound by the forum-selection clause.

## B. THE AGREEMENT'S DELAWARE CHOICE-OF-LAW CLAUSE DOES NOT BAR COUNTS II AND III.

### 1. The Parties' Contentions

While Defendants insist the Agreement's choice-of-law clause bars RGIS's TSA claims,[86] they acknowledge the split authority regarding whether a Delaware choice-of-law provision compels dismissal of the TSA claims in their motion.[87] And they suggest *Anschutz Corp. v. Brown Robin Capital* should control here[88] arguing that *Wind Point Pr's v. Insight Equity* is inapplicable because the SCA does not plead

---

[85]  *See Green America*, 2021 WL 2211696, at \*3 (internal quotes omitted).

[86]  MTD at 18-23 (citing *Anschutz Corp. v. Brown Robin Capital, LLC*, 2020 WL 3096744, at \*7 (Del. Ch. 2020) ("Delaware respects and generally enforced contracting parties' selection of a particular state's law to govern their disputes.")); *see* Agreement § 15.1.

[87]  *See* MTD at 19-23. *Compare Anschutz*, 2020 WL 3096744, at \*7-8 (holding a Delaware choice-of-law provision compelled dismissal of claims under other states' fraud and securities statutes based on alleged contractual misrepresentations), *with Wind Point P'rs. VII-A, L.P. v. Insight Equity A.P. X Co.*, 2020 WL 5054791, at \*19-20 (Del. Super. Ct. Aug. 17, 2020) (holding a Delaware choice-of-law provision does not compel dismissal of a TSA claim when: (1) Texas is the "default state"; (2) enforcing the choice-of-law provision would contradict Texas public policy; and (3) Texas has a greater interest than Delaware in the case).

[88]  MTD at 21 ("[T]he Supreme Court [] [] cited the *Anschutz* holding favorably and has not done so with *Wind Point*.") (citing *Stillwater Mining Co. v. Nat'l Union Fire Ins. Co.*, 289 A.3d 1274, 1287 n.77 (Del. 2023)).

facts showing Texas is the "default state"[89] or "has a materially greater interest in this case than Delaware."[90]

RGIS counters that Delaware courts recognize an exception to the general enforceability of choice-of-law provisions[91] that can indeed apply to TSA claims.[92] In RGIS's view, the SAC alleges facts that establish: (1) Texas is the default state;[93] (2) Texas has a greater interest in the dispute;[94] and (3) "enforcing the [Agreement's] Delaware choice-of-law provision would be contrary to Texas' fundamental policy."[95]

### 2. Counts II and III survive the challenge based on the Agreement's choice-of-law clause.

The Court must first determine whether *Anschutz* or *Wind Point* provides the proper framework to evaluate the choice-of-law provision's effect on Counts II and III. In this instance, the Court finds *Wind Point* more persuasive.[96]

---

[89] MTD at 21-23.

[90] *Id.* at 21. MTD Reply at 14-15.

[91] MTD Opp'n at 20-26 (citing *Swipe Acquisition Corp. v. Krauss*, 2021 WL 282642, at *2 (Del. Ch. Jan. 28, 2021)).

[92] *See Wind Point*, 2020 WL 5054791, at *19-20.

[93] MTD Opp'n at 23-24 ("the SAC alleges that a substantial part of the fraudulent conduct giving rise to the violation occurred in Texas . . . the Selling Defendants are headquartered in Texas and the Individual[s] . . . are Texas residents." (citing SAC ¶¶ 10-11, 13-14)).

[94] *Id.* at 24-25 (citing *Wind Point*, 2020 WL 5054791, at *19; *Swipe Acquisition*, 2021 WL 282642, at *4).

[95] MTD Opp'n at 25-26.

[96] Our Supreme Court's brief citation to and explanatory note regarding *Anschutz* doesn't counsel otherwise. *See Stillwater*, 289 A.3d at 1287 n.77. The *Wind Point* analysis considers the threshold

Under *Wind Point*, a TSA claim survives notwithstanding a Delaware choice-of-law clause when: (1) Texas is the default state; (2) enforcing the contract would violate a fundamental Texas public policy; and (3) Texas has a materially greater interest in the dispute.[97] Defendants only dispute the first and third elements.

Element three is met for the same reasons articulated in *Wind Point*—namely, because the Delaware Securities Act "is not meant to regulate interstate securities transactions," adopting Defendants' proffered interpretation "would lead to absurd results and leave investors without protection."[98] Given the TSA is "intended not only to protect Texas residents but also non-Texas residents from fraudulent

---

question of whether the choice-of-law provision is enforceable.

*Anschutz* did not consider the TSA's anti-waiver provision. TEX. GOV'T CODE ANN. § 4008.002 (2021); *see Swipe*, 2021 WL 282642, at *6 (applying *Wind Point* over *Anschutz*, because "[u]nlike in *Wind Point*, the parties in *Anschutz* did not raise, and the court did not have reason to address, whether the Texas Securities Act's anti-waiver provision barred dismissal of the Texas Securities Act claim.").

Moreover, *Anschutz* didn't address the doctrine permitting departure from a choice-of-law clause to prevent contracting around a default state's public policy. *See Anschutz*, 2020 WL 3096744, at *7-8; *Ascension Ins. Hldgs, LLC v. Underwood*, 2015 WL 356002, at *2 (Del. Ch. Jan. 28, 2015) ("[W]here the parties enter a contract which, absent a choice-of-law provision, would be governed by the law of a particular state (which I will call the 'default state'), and the default state has a public policy under which a contractual provision would be limited or void, the Restatement recognizes that allowing the parties to contract around that public policy would be an unwholesome exercise of freedom of contract.").

[97]    *Wind Point*, 2020 WL 5054791, at *19.

[98]    *Id.* at *20 (citing *FdG Logistics LLC v. A&R Logistics Holdings, Inc.*, 131 A.3d 842, 855-856 (Del. Ch. 2016), *aff'd sub nom. A & R Logistics Hldgs, Inc. v. FdG Logistics LLC*, 148 A.3d 1171 (Del. 2016)). *See also Swipe Acquisition*, 2021 WL 282642, at *5 ("[E]nforcing a general choice-of-law provision to prohibit the assertion of a foreign state's securities law [is] contrary to the purpose of Section 2708 and would lead to absurd results, including by causing the Delaware Securities Act to regulate interstate securities transactions." (internal quotes omitted)).

-17-

securities practices emanating from Texas,"[99] Texas has a stronger interest in the dispute. As such, the Agreement's choice-of-law clause does not bar Counts II and III if Texas is the default state.

When determining the "default state," courts consider: "(a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties."[100] Considering these factors, Texas is the default state.

The SAC is silent on the first three factors, but it can be reasonably inferred that the parties negotiated, entered, and performed the Agreement in Texas.[101] The subject matter of the Agreement—equity in the Transferred Entities—was held by the Selling Defendants in Texas and relates to international entities.[102] Finally, while the entity-parties are Delaware corporations, both the Individuals and Selling Defendants are located in Texas.[103] As it at this point, at very least, reasonably

---

[99] *In re Enron Corp. Secs.*, 235 F.Supp.2d 549 691-92 (S.D. Tex. 2002).

[100] Restatement (Second) Conflict of Laws § 188 (1971); *See Sycamore Partners Management, L.P. v. Endurance American Insurance Company*, 2021 WL 761639, at *8-9 (Del. Super. Ct. Feb. 26, 2021).

[101] All Defendants are based in Texas and the Transferred Companies are international entities. SAC ¶¶ 1, 10-11, 13-14. Conversely, the SAC has no allegations that any portion of the Transaction took place in Delaware. *See generally id.*

[102] *See id.* ¶¶ 1, 10-11.

[103] SAC ¶¶ 9-11, 13-14. The SAC is silent regarding where RGIS is located. *See generally id.*

conceivable that Texas is the default state, the Court cannot find the Agreement's choice-of-law clause bars Counts II and III.

## C. THE TSA'S THREE-YEAR STATUTE OF LIMITATIONS BARS COUNTS II AND III.

### 1. The Parties Contentions

Defendants contend the TSA's three-year statute of limitations[104] bars Counts II and III.[105] They assert RGIS's TSA claims accrued in September[106] or November of 2021.[107] They then note Plaintiffs filed the SAC on February 17, 2025—raising TSA claims for the first time more than three years after they accrued.[108]

RGIS insists Counts II and III aren't time-barred, because they relate back to the original complaint.[109] RGIS recognizes Delaware's relation-back doctrine does not apply where a foreign jurisdiction's procedural limitations are "inseparably

---

[104] The TSA's three-year statute of limitations begins to run from: (1) the date the claimant discovers the lie or omission; or (2) the date the claimant should have discovered the untruthfulness by exercising reasonable diligence. TEX. GOV'T CODE ANN. § 4008.062 (2021).

[105] MTD at 23-27.

[106] The date the stock sale closed. MTD at 23 (citing *Stone v. Enstam*, 541 S.W.2d 473, 478 (Tex. App. 1976)); *see* SAC ¶ 85.

[107] MTD at 23-24; *see* SAC ¶ 8 (referencing a November 10, 2021, demand letter sent from Plaintiffs to Defendants). Defendants contend the November 2021 letter "makes clear that Plaintiffs had discover the purported facts they now rely upon to claim the alleged untruths and omissions at issue in the SAC, including: the purported VAT to Mexican tax administration service, pending labor claims, transfers the day before closing, and employee bonuses." MTD at 24 (citing SAC ¶¶ 8, 28-60).

[108] *Id.* at 24-26; *see generally* SAC.

[109] MTD Opp'n at 26-29 (citing Del. Super. Ct. Civ. R. 15(c)(2)). RGIS asserts the Delaware relation-back doctrine is a procedural rule that applies to the parties' dispute. *Id.* at 26 (citing *Chaplake Hldgs., LTD v. Chrysler Corp.*, 766 A.2d 1,3 (Del. 2001)).

interwoven with substantive rights,"[110] but insists that exception does not apply.[111]

Substantively, RGIS argues the relation-back doctrine applies because "Counts II and III arise out of the same conduct alleged in the original complaint—[] Selling Defendants' sale of the Transferred Companies to Plaintiffs by means of untrue statements of material fact."[112]

### 2. The TSA's three-year statute of limitations is substantive and is a bar to Counts II and III's untimely claims.

RGIS does not dispute it first asserted TSA claims outside of Texas's three-year statute of limitations. Thus, the timeliness of Counts II and III depends on the applicability of Delaware's relation-back doctrine. Generally, "the law of the forum governs procedural matters"[113] and "the relation back of statutes of limitations are []

---

[110] *US Dominion, Inc. v. Fox News Network, LLC*, 2021 WL 5984265, at *18 (Del. Super. Ct. Dec. 16, 2021).

[111] MTD Opp'n at 26-27.

[112] *Id.* at 28. In resistance, Defendants posit: "The TSA's built-in three-year limitation to assert a claim . . . is a substantive–not procedural–right." MTD Reply at 16; *see Weisz v. Spindletop Oil and Gas Co.*, 664 S.W.2d 423, 426 (Tex. App. 1983) ("Texas follows the rule that 'where the statute creates a right and also incorporates a limitation upon the time within which the suit is to be brought, the limitation qualifies the right so that it becomes a part of the substantive law rather than procedural.'") (quoting *State of California v. Copus*, 309 S.W.2d 227, 231 (Tex. 1958)). Defendants argue too that even were the Court to apply Delaware law, the three-year limitation is substantive because it is built-into the statute. MTD Reply at 16-17 (citing *CHC Invs., LLC v. FirstSun Cap. Bancorp*, 2020 WL 1480857, at *4 n.26 (Del. Ch. 2020) (holding a "foreign limitations period is a substantive 'built-in' aspect of the statutory right rather than a procedural issue . . . where a statute give a new right or creates a new liability and the same section or act limits the time within which it can be enforced." (internal quotes omitted)). So, they say, because the TSA's limitation period is substantive, the relation-back doctrine does not save Counts II and III. *Id.* at 17-18.

[113] *Chaplake Hldgs.*, 766 A.2d at 5.

considered to be procedural rather than substantive."[114]

A foreign state's statute of limitations is "a matter of substance, rather than procedure, when the statute of limitations is 'inseparably interwoven' with the substantive laws of the foreign state."[115] In that situation, Delaware courts apply the foreign jurisdiction's statute of limitations without addressing the relation-back doctrine.[116] This comports with the notion that courts should not allow litigants to "get[] the benefit of a statute of limitations that really ought not to apply given the fact that the substantive law is interwoven with the procedural right."[117]

So, is the TSA's three-year statute of limitations "inseparably interwoven" with is substantive provisions? A statute of limitations is "inseparably interwoven" when it is a "built-in" aspect of the substantive law.[118] A limitations period is "built-in" "where a statute gives a new right or creates a new liability and the same section

[114] *In re Asbestos Litigation*, 2018 WL 1468096, at *1 (Del. Super. Ct. Mar. 26, 2018); *see US Dominion*, 2022 WL 2229781, *6 n.67 ("Under Delaware's conflict of law rules, a statute of limitations is procedural, not substantive[.]" (internal quotes omitted)).

[115] *Crawford v. Syngenta Crop Protection, LLC*, 2024 WL 2831554, at *5 (Del. Super. Ct. May 31, 2024) (quoting *US Dominion*, 2021 WL 5984265, at *6 n.68).

[116] *See Chaplake Hldgs.*, 766 A.2d at 5 ("The procedural law of a foreign state will, however, be applied when the law of a foreign state is applied to substantive issues and the procedural law of the foreign state is so inseparably interwoven with substantive rights as to render a modification of the foregoing rule necessary, lest a party be thereby deprived of his legal rights." (internal quotes omitted)).

[117] *Saudi Basic Industries Corp. v. Mobil Yanbu Petrochemical co., Inc.*, 866 A.2d 1, 15, 17-18 (Del. 2005) (applying Saudi statute of limitations, or lack thereof, because it was built-into the statute that there was no time limit for asserting a claim).

[118] *See Natale v. Upjohn Co.*, 236 F. Supp. 37, 40 (D. Del. 1964) (interpreting Delaware law) (citing *Pack v. Beech Aircraft*, 132 A.2d 54, 67 (Del. 1957)).

or act limits the time within which it can be enforced."[119]

Under that standard, the TSA's statute of limitations is inseparably interwoven with the substantive provisions. The same statute that created the causes of action on which Counts II and III rely,[120] establishes the three-year limitations period.[121] Restated, the statute that creates the substantive right RGIS seeks to enforce, also limits the time in which the right can be asserted. Accordingly, the Texas statute of limitations applies, the Court need not address the relation-back doctrine; even if otherwise properly and adequately pled, the TSA claims are time-barred and cannot survive.

## IV. CONCLUSION

For the foregoing reasons, the Court must **GRANT** the Defendants' motion. The SAC's Counts II and III are time-barred and **DISMISSED**.

**IT IS SO ORDERED.**

/s/ *Paul R. Wallace*

_____

Paul R. Wallace, Judge

---

[119] *CHC Invs.*, 2020 WL 1480857, at *4 n.26 (citations omitted). Texas law applies the same standard. *See Shields v. State*, 27 S.W.3d 267, 275 (Tex. App. 2000) (holding where a statute "creates a private right of action and incorporates a time limit within which the investor must initiate the action, the limitation qualifies the right and becomes an element of the statutory cause of action itself." (citing *California v. Copus*, 309 S.W.2d 227, 231 (Tex. 1958)). And therefore, under Texas law, where that is the case, the temporal "qualification on filing suit is not considered to be a statute of limitations." *Id.*

[120] *See* SAC ¶¶ 97-98 (noting Counts II and III advance claims against the Selling Defendants under TSA § 4008.052 and the Individuals under TSA § 4008.055).

[121] TEX. GOV'T CODE ANN. § 4008.062 (2021).